IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA | **I N D I C T M E N T** |
| v. | Case No. _____ |
| RONALD ANDREW MAY | Violations: 18 U.S.C. §§ 981(a)(1)(C) and 1343; 28 U.S.C. § 2461(c) |

## **Background**

1. Victim is a North Dakota business engaged in selling agricultural and construction equipment in North Dakota and elsewhere. Victim utilizes email and other forms of electronic communication, which are forms of interstate and foreign commerce, to communicate with clients, vendors, and financial institutions.

2. As part of its business, Victim secures financing options for purchasers of tractors and agricultural equipment. Most financing was provided by John Deere Financial, while some financing was provided by third-party lenders.

3. Victim earned finance income in two ways. First, certain lenders had an agreement with Victim to kick back part of the finance charge based on the cost of the equipment purchased. Second, Victim could earn income on the difference between the finance rate charged by the Victim to the buyer and the rate that Victim paid to a financial institution to secure financing.

4. Finance income generally represented between approximately one percent and three percent of the total amount financed on a transaction. The income typically fell between $3,000 and $15,000 per transaction.

5. Finance income earned from outside lenders required the creation of an invoice, which was sent to the financial institution. The invoice was typically sent to the lender as an electronic document attached to an email. Salespeople were paid a bonus based on the amount of finance income earned from sales of tractors and equipment. Lenders would either wire the entire transaction, including the finance income, directly to Victim, or the lenders would wire the Victim the funds for the equipment and send a separate wire to pay Victim the earned finance income.

6. Victim's regional finance managers earned both a salary and a bonus. The bonus was based on a percentage of the net income the regional finance manager generated. The salary and the bonus were paid to employees through payroll, and never directly from lenders.

7. Defendant, RONALD ANDREW MAY, was a regional finance manager of Victim's north Texas region from 2014 to 2023. RONALD ANDREW MAY offered finance options to facilitate the sale of equipment to Victim's customers in north Texas. RONALD ANDREW MAY was a salaried employee and also earned ten percent of finance income from his sales that were financed through third-party lenders.

8. During an audit of Victim's north Texas financed sales in 2023, Victim determined that it had not been paid approximately $1.1 million of finance income it had earned. Victim looked further into transactions in which no finance income was recorded.

9. Victim reviewed email correspondence in which RONALD ANDREW MAY used his employer's email to send invoices to third-party lenders with instructions for wiring finance income. The invoices emailed by RONALD ANDREW MAY listed Victim as the beneficiary of the wire instructions, but RONALD ANDREW MAY instructed the lenders to wire finance income into RONALD ANDREW MAY'S personal bank account. The personal account matched the account number into which Victim directed RONALD ANDREW MAY'S payroll.

10. The finance income was diverted from primarily four lenders, including Scottrade, Midland States Bank, Arvest Bank, and PEAC Solutions.

11. Victim set up a meeting with RONALD ANDREW MAY to confront him about the finance income RONALD ANDREW MAY diverted to his personal accounts. RONALD ANDREW MAY admitted that he diverted finance income to himself to supplement his income.

12. Victim hosts and maintains its electronic communications and other business applications on servers located in Fargo, North Dakota. Electronic communications sent from RONALD ANDREW MAY using Victim's email server travelled through Victim's servers in interstate commerce.

## The Scheme

13. Between 2014 and September 2023, in the District of North Dakota, Defendant, RONALD ANDREW MAY, devised and intended to devise a scheme to defraud Victim, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises. It was part of the scheme that RONALD ANDREW MAY would divert finance income earned from his employer, Victim, which Victim earned by financing equipment sales through third-party lenders. RONALD ANDREW MAY would divert the finance income by emailing invoices to various third-party lenders directing the lenders to pay the finance income into RONALD ANDREW MAY'S personal account, instead of Victim's corporate account.

COUNT ONE

**Wire Fraud**

The Grand Jury Charges:

The Grand Jury adopts all of the allegations contained within paragraphs 1 through 13 as if they were stated here.

On or about November 5, 2019, in the District of North Dakota and elsewhere, Defendant,

RONALD ANDREW MAY,

for the purpose of executing the scheme described above, caused to be transmitted in interstate commerce a wire communication from the Defendant's email account at Victim to send WIRE/ACH/EFT instructions to Midland Bank, signing the email as Regional Finance Manager for Victim.  The Defendant instructed Midland Bank to send "Machine Proceeds" to Victim's account at U.S. Bank, and to send "Dealer Commission Proceeds (Texas Transactions Only)" to Defendant's personal account at Compass Bank, when all proceeds should have been sent to Victim.  Midland Bank paid approximately $62,229 in finance income directly to the Defendant in 2020 alone.

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

## Wire Fraud

The Grand Jury Further Charges:

The Grand Jury adopts all of the allegations contained within paragraphs 1 through 13 as if they were stated here.

On or about October 25, 2021, in the District of North Dakota and elsewhere, Defendant,

## RONALD ANDREW MAY,

for the purpose of executing the scheme described above, caused to be transmitted in interstate commerce a wire communication from the Defendant's email account at Victim sending Victim WIRE/ACH/EFT instructions to Midland Bank. The Defendant instructed Midland Bank to send "Dealer Commission Proceeds (Texas Transactions Only)" to Defendant's personal account at PNC Bank (formerly Compass Bank), when all proceeds should have been sent to Victim. In the two years following the Defendant's instructions on October 25, 2021, Midland Bank paid approximately $473,713 in finance income directly to the Defendant.

In violation of Title 18, United States Code, Section 1343.

## COUNT THREE

**Wire Fraud**

The Grand Jury Further Charges:

The Grand Jury adopts all of the allegations contained within paragraphs 1 through 13 as if they were stated here.

On or about June 10, 2019, in the District of North Dakota and elsewhere, Defendant,

RONALD ANDREW MAY,

for the purpose of executing the scheme described above, caused to be transmitted in interstate commerce a wire communication from the Defendant's email account at Victim to Arvest Bank. The Defendant instructed Arvest Bank "Machine invoice funds goes to one account and dealer commission to a separate account." Specifically, Defendant instructed Arvest Bank to send "Dealer Commission Proceeds: (Texas Transactions Only)" to his personal bank account at Compass Bank. Arvest Bank paid approximately $306,828 in finance income directly to the Defendant from 2019 to 2023, following the Defendant's instructions.

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE NOTICE

Upon conviction of one or more of the offenses charged in this Indictment,

RONALD ANDREW MAY

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), all right, title, and interest in any property, real or personal, which constitutes or is derived from proceeds traceable to violation(s) of 18 U.S.C. § 1343.

If any of the assets subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, as a result of any act or omission of RONALD ANDREW MAY:

- a. cannot be located upon the exercise of due diligence;
- b. has been transferred or sold to, or deposited with, a third party;
- c. has been placed beyond the jurisdiction of the court;
- d. has been substantially diminished in value; or
- e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek forfeiture of any other property of defendant's up to the value of said property subject to forfeiture.

A TRUE BILL:

/s/ Foreperson  
Foreperson

/s/ Mac Schneider  
MAC SCHNEIDER  
United States Attorney

MDG/alk